## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-23480-CIV-GAYLES/D'ANGELO

J. DAVID JOHN,

      **Plaintiff,**

**vs.**

**MEGAN MARIE BOLINDER, et al.,**

      **Defendants.**

_____/

### OMNIBUS REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on two motions.  First, Defendant Megan Marie Bolinder filed a Motion to Designate Plaintiff a Vexatious Litigant on August 15, 2025 (DE 27). Plaintiff J. David John filed his response in opposition on August 19, 2025 (DE 28), and Defendant Bolinder replied on August 26, 2025 (DE 29).[1]  Second, Defendant Bolinder filed a Motion for Attorney's Fees on October 29, 2025 (DE 32).  Plaintiff filed a response in opposition on November 12, 2025 (DE 36), and the Court did not permit a reply (DE 31).  On November 20, 2025, the Court held a hearing on both Motions (DE 42).  Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Defendant Bolinder's Motion to Designate Plaintiff a Vexatious Litigant (DE 27) be **DENIED**.  It is further respectfully recommended that Defendant Bolinder's Motion for Attorney's Fees (DE 32) be **GRANTED IN-PART**.

---

[1] This case was referred to the undersigned Magistrate Judge for a ruling on all pretrial non-dispositive matters and a Report and Recommendation on all dispositive matters (DE 15).

I.  **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

On August 4, 2025, Plaintiff, proceeding *pro se*, filed the Complaint, bringing claims under

Title 42, United States Code, Section 1983 for Violation of Due Process and Equal Protection,

Conspiracy to Violate Civil Rights, Violation of Access to Courts and First Amendment Rights,

Malicious Prosecution, and Administrative and Judicial Obstruction (DE 1 ¶¶ 79-107).  Plaintiff

alleges that these claims arise from an Arkansas child custody dispute between him and Defendant

Bolinder, about which the two have been litigating since 2010 (*id.* ¶¶ 19-20).  The same day that

he filed his Complaint, Plaintiff filed an Emergency Petition for Temporary Restraining Order (DE

3).  On August 5, 2025, the Court denied Plaintiff's Emergency Petition without prejudice for

failure to comply with Rule 65(b) of the Federal Rules of Civil Procedure and the Court's Local

Rules (DE 10 at 2-3).  The next day, Plaintiff filed his Amended Emergency Petition for a

Temporary Restraining Order, requesting that the Court enjoin Defendants, including a judge in

an Arkansas state court, from enforcing a scheduling order, prohibit the enforcement of an order

from the Arkansas state court, prohibit Plaintiff from travelling to Arkansas, enjoin Defendants

from compelling the minor-child's appearance outside Florida, and declare that the Arkansas state

proceedings are improper (DE 11 at 20-21).

After ordering Plaintiff to serve the Amended Emergency Petition on Defendants, the Court

set a hearing on the motion for August 8, 2025 (DE 12 at 1-2).  A day before the August 8, 2025

hearing on the Amended Emergency Motion, Plaintiff filed an Expedited Motion to Continue the

Hearing, requesting that the hearing be continued due to "an urgent and time-sensitive matter

involving the minor child" (DE 16).  The Court granted Plaintiff's motion, specifically stating,

> Nothing in this Court's Order affects any party's obligations to comply with any
> order of any other court. The continuance referenced above pertains to the hearing
> in these proceedings only, and this Order does not in any way modify, alter, or
> cancel any matter outside of the instant proceedings. Further, based on the parties'
> representations that there are proceedings scheduled in the Arkansas case around

2

the time of the hearing scheduled in this matter, this Court is permitting the parties to appear by Zoom to alleviate any issues related to travel.

(DE 19 at 2) (emphasis removed).  The Court reset the hearing to August 13, 2025 (*id.*).  On August 13, 2025, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice at 12:20 p.m., only ten minutes before the hearing on his Amended Emergency Motion was scheduled to begin (DE 24).  At the hearing – lasting approximately ten minutes – Plaintiff stated that he was not seeking any further relief from the Court and voluntarily dismissed his case (DE 26).  The same day, the Court dismissed the case in accordance with Plaintiff's Notice (DE 25).

As a result, Defendant Bolinder filed her Motion to Designate Plaintiff a Vexatious Litigant on August 15, 2025, requesting that the Court designate Plaintiff as a vexatious litigant, restrict his filing privileges, and award her attorney's fees and costs associated with this action (DE 27).  On October 15, 2025, the Court issued an Order directing Defendant Bolinder to file a separate Motion for Attorney's Fees if she wished to pursue that relief by October 29, 2025 (DE 31).  Defendant Bolinder subsequently filed her Motion for Attorney's Fees on October 29, 2025 (DE 32).  The Court held a hearing on November 20, 2025 on Defendant Bolinder's Motion to Designate Plaintiff a Vexatious Litigant and Motion for Attorney's Fees, at which Defendant Bolinder's counsel appeared in-person, and Plaintiff appeared by Zoom (DE 42).[2]

## II.    THE RELATED ACTIONS

Plaintiff has filed at least five separate cases in various federal courts related to the custody dispute between him and Defendant.  First, *John v. Bolinder et al.*, No. 22-CIV-00817 (E.D. Ark.)

---

[2] At the November 20, 2025 hearing, the Court allowed the Parties to present any arguments or evidence on the pending Motions (DE 42).  Prior to the hearing, Plaintiff filed a series of motions with the Court, requesting that the hearing be canceled and arguing that the Court had sufficient information to rule on the pending motions based on the briefs alone (DE 35, 39, 40).  In its sound discretion, the Court determined that it would benefit from a hearing with the Parties but allowed Plaintiff to appear by Zoom based on various concerns Plaintiff raised in his motions (DE 41).

was filed in the Eastern District of Arkansas in 2022.  There, Plaintiff sued the State of Arkansas, a state court judge, Kristin L. Pawlik, and Megan M. Bolinder based on "an ongoing custody case in Bentonville, AR" (*id.* at DE 1 at 7).  The same day he filed that case, Plaintiff filed a motion for a temporary restraining order, seeking to enjoin various orders by the state court judge in the custody dispute (*id.*at DE 2 at 4).  The court denied the motion, finding the state court judge had judicial immunity for acts taken in his official capacity while presiding over the custody dispute, so Plaintiff was unlikely to succeed on his claims (*id.* at DE 2, DE 3).  Shortly thereafter, Plaintiff voluntarily dismissed that case without prejudice (*id.* at DE 4).

Second, Plaintiff filed *John v. Bolinder et al.*, No. 22-CIV-23401 (S.D. Fla.) in this District one month after filing his case in the Eastern District of Arkansas.  Platiniff's claim again challenged actions in the same ongoing child custody battle in Arkansas (*id.* at DE 1 ¶¶ 10-15).  There, the Court granted the defendants' motion to dismiss, finding that "Plaintiff's action asserts nearly identical claims against substantially similar parties as that asserted in *John v. Bolinder*, et al., 4:22-CV-00817-BRW, an action filed in the Eastern District of Arkansas on September 9, 2022" (*id.* at DE 23).  The court dismissed the case without prejudice, deferring to the first-filed action in the Eastern District of Arkansas (*id.*).

Third, Plaintiff filed *John v. Bolinder et al.*, No. 24-CIV-20348 (S.D. Fla.) in this District in 2024.  In that case, Plaintiff again sued the same defendants related to the same Arkansas child custody dispute (*id.* at DE 1 ¶¶ 14-16, 20-21, 26,28).  After some litigation, the Court granted the defendants' motion to dismiss, finding the Complaint was an impermissible shotgun pleading and dismissing the action without prejudice (*id.* at DE 50). Importantly, the Court stated, "Plaintiff's claims against Judge Schrantz [who was presided over the custody dispute] are dismissed with

prejudice. 'Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity . . . .'" (*id.* (citation omitted)).

Fourth, Plaintiff filed the instant action, *John v. Bolinder et al.*, No. 25-CIV-23480 (S.D. Fla.), in August 2025. This action, too, is brought against nearly the same defendants arising out of actions in the same child custody dispute in Arkansas (DE 1). Additionally, in 2018, Plaintiff sued Defendant Bolinder in the Northern District of Illinois in *John v. Bolinder et al.*, No. 18-CIV-50180 (N.D. Ill.). That case concerned Defendant Bolinder purportedly receiving information about Plaintiff from Wheaton College to gain an advantage in litigation (*id.* at DE 1 ¶¶ 13-16).[3] That case was dismissed without prejudice on Plaintiff's motion (*id.* at DE 13, DE 15).

## III.    DISCUSSION

### A.  Defendant Bolinder's Motion to Deem Plaintiff a Vexatious Litigant

In her Motion, Defendant Bolinder claims that Plaintiff "has earned the vexatious litigant designation" by filing four frivolous lawsuits in the last three years against her (DE 27 at 1, 7). According to Defendant Bolinder, "[e]ach federal case arises from adverse decisions in the Arkansas Custody Case, and each has been dismissed: Plaintiff voluntarily dismissed the Arkansas Federal Case, Judge Gayles dismissed the First Refiled Case and the Second Refiled Case, and Plaintiff again voluntarily dismissed the Third Refiled Case eight minutes before he was ordered to show cause at a hearing on August 13, 2025" (*id.* at 7). Defendant Bolinder argues that whenever the Arkansas court issues an adverse ruling against Plaintiff in the custody matter, he "files suit in federal court bringing the same meritless constitutional claims against Bolinder, her lawyers, and Arkansas judges as a vehicle to harass them and then uses his frivolous federal cases to justify noncompliance with orders of the Arkansas custody court" (*id.*). As a result, Defendant

---

[3] In the Northern District of Illinois case, it is unclear to what "litigation" Plaintiff referred to.

Bolinder says this Court should require Plaintiff to (1) seek Court approval before he can file a new case related the Arkansas custody dispute, and/or (2) if Plaintiff files anything else in the future, it must be signed by a good standing member of the Florida Bar (*id.* at 8).

Plaintiff argues that he dismissed this case without prejudice under Rule 41 of the Federal Rules of Civil Procedure, making Defendant Bolinder's Motion "untimely and void for lack of jurisdiction" (DE 28 at 1). Plaintiff argues that the Court did not retain jurisdiction to impose collateral sanctions, and Defendant Bolinder's Motion cannot be considered by the Court (*id.* at 3). Plaintiff also takes issue with the litigation history between the Parties and states that his filings "have been compelled by extraordinary threats, coercion, and retaliation in state court" (*id.* at 2). Plaintiff recounts various proceedings and rulings in the Arkansas custody dispute that "created a climate of intimidation that directly impaired Plaintiff's ability to prosecute his cases[,]" making federal filings necessary to "protect his constitutional rights where state remedies have been undermined" (*id.* at 5). Lastly, Plaintiff argues that Defendant Bolinder's Motion is intended "to silence Plaintiff and foreclose access to federal courts" (*id.* at 6).

### 1.      Legal Standard

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (citation omitted). "The court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." *Id.* "Further, the inherent authority of a district court includes the power to protect itself against abuses by pro se litigants." *Thomas v. Christina*, No. 22-CIV-20498, 2022 WL 1100851, at *3 (S.D. Fla. Apr. 13, 2022) (citing *Procup*, 792 F.2d at 1073-74). A vexatious litigant is a party "who ha[s] repeatedly abused the judicial process through a series of actions

6

brought in state and federal courts . . . to relitigate . . . issues, which were decided adversely to him . . . ." *In re Farris*, 330 F. App'x 833, 835 (11th Cir. 2009) (quotations omitted).

"The right of access to the courts 'is neither absolute nor unconditional.'" *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) (quoting *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 516 (11th Cir.1991)).   "Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons. Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants." *Id.*   "A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1298 (11th Cir. 2002) (citation omitted).   To curb vexatious litigation, a court can issue an injunction "designed to protect against abusive and vexatious litigation" so long as the litigant "cannot be 'completely foreclosed from *any* access to the court.'" *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993) (emphasis in original) (citation omitted).

### 2.      Defendant's Request to Designate Plaintiff as a Vexatious Litigant

As an initial matter, Plaintiff's contends that he divested the Court of jurisdiction by voluntarily dismissing this case under Federal Rule of Civil Procedure 41.  That is not so; the Court retains jurisdiction to consider Defendant Bolinder's Motions.   "[I]t is clear that even when a voluntary dismissal disposes of an entire action, district courts retain jurisdiction to consider at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards." *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021); *see also Thompson v. Fla. Bar*, No. 10-CIV-442, 2010 WL 5497673, at *8 (M.D. Fla. Nov. 16, 2010) (explaining that even though the plaintiff voluntarily dismissed the case, the court still had jurisdiction to consider the defendant's request for an

injunction to restrict any future filings by the plaintiff).  The Court can adjudicate Defendant Bolinder's Motions, notwithstanding Plaintiff's voluntary dismissal of this action.

At this juncture, the undersigned respectfully recommends that the Court decline to designate Plaintiff as a vexatious litigant and restrict his filing privileges.  Plaintiff is certainly on notice that continuing his current litigation strategy, in which he attempts to repeatedly challenge adverse custody rulings of the Arkansas state court in numerous federal actions, may lead to such a designation.  Moreover, Plaintiff's tactic of voluntarily dismissing actions before the Court substantively rules on Plaintiff's claims will not avoid that result.  At the same time, in the undersigned's view, Defendant Bolinder's request is a weighty one.  Before issuing an anti-suit injunction against a party as a vexatious litigant, the Court should first consider whether a lesser measure would deter similar future conduct.  *See In re Head*, 174 F. App'x 167, 168 (4th Cir. 2006) (explaining that when considering enjoining a *pro se* party for being a vexatious litigant, courts should consider lesser sanctions (per curiam)); *Watkins v. Dubreuil*, No. 19-CIV-62260, 2019 WL 13489780, at *8 (S.D. Fla. Oct. 15, 2019) (declining to enjoin a *pro se* party and instead considering less stringent sanctions, such as denying a motion to proceed *in forma pauperis* and requiring the payment of a filing fee or securing the appearance of a lawyer).

At this point, the Court can fashion lesser sanctions to compensate Defendant Bolinder and deter Plaintiff from filing repeated lawsuits.  *See Woodhull v. Mascarella*, No. 15-CIV-280, 2016 WL 3660527, at *6 (N.D. Fla. May 26, 2016), *report and recommendation adopted*, No. 15-CIV-280, 2016 WL 3661390 (N.D. Fla. July 5, 2016), *aff'd*, 699 F. App'x 872 (11th Cir. 2017) (declining to issue an pre-filing injunction and concluding that monetary sanctions were appropriate to compensate the defendant and deter the plaintiff from filing future lawsuits). Furthermore, while Defendant Bolinder made a passing reference to designating Plaintiff as a

vexatious litigant in a previous motion, this is the first time the request has been fully briefed by a separate motion for the Court's consideration. *See John v. Bolinder et al.*, No. 24-CIV-20348, DE 28 at 19-20 (S.D. Fla. May 17, 2024). Although the undersigned finds that Plaintiff's conduct has not yet risen to the level of restricting his access to the Court, Plaintiff is warned that continuing a pattern of initiating duplicative, costly, and harassing lawsuits may result in Plaintiff being designated as a vexatious litigant, and the Court may issue a limited injunction restricting his ability to file future lawsuits unless certain conditions are met. Therefore, it is respectfully recommended that Defendant Bolinder's Motion to Designate Plaintiff a Vexatious Litigant (DE 27) be **DENIED**.

### B.  Defendant Bolinder's Motion for Attorney's Fees

Additionally, Defendant Bolinder requests that the Court award her attorney's fees in this action (DE 32). Defendant Bolinder argues that she is entitled to fees as the prevailing party under Title 42, United States Code, Section 1988(b), as well as under the Court's inherent authority to sanction bad-faith conduct (*id.* at 3-7). Plaintiff counters that there is no prevailing party, because he dismissed the case without prejudice, that his claims were factually and legally supported, and that Defendant Bolinder's fee request is not reasonable (DE 36 at 2-6).

### 1.     Request for Fees Pursuant to 42 U.S.C. § 1988(b)

Defendant Bolinder asserts that she is the prevailing party in this action and is therefore entitled to reasonable attorney's fees under Section 1988(b) (DE 32 at 3-7). Defendant Bolinder claims that Plaintiff's Notice of Voluntary Dismissal Without Prejudice operates as an adjudication on the merits under the two-dismissal rule, because Plaintiff previously filed materially identical cases that he either withdrew or were dismissed by a Court (*id.* at 3). As a result, Defendant Bolinder argues that under Section 1988(b), the Court has discretion to award her reasonable

attorney's fees as the prevailing party (*id.*).  Plaintiff counters that Defendant Bolinder's fee motion should be denied in full (DE 36 at 1).  In support of this argument, Plaintiff explains that his dismissal of this action without prejudice did not confer prevailing party status upon Defendant Bolinder, because there was no material alteration in the Parties' legal relationship (*id.* at 1, 3).

"Under 42 U.S.C. § 1988(b), courts have the discretion to award costs, including a 'reasonable attorney's fee,' to the prevailing party in a civil rights action."  *Otto v. City of Boca Raton, Fla.*, No. 24-10478, 2025 WL 2952783, at *2 (11th Cir. Oct. 20, 2025).  "[F]or the purposes of § 1988(b), a plaintiff 'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'"  *Lackey v. Stinnie*, 604 U.S. 192, 202 (2025).  Defendant Bolinder argues that she is the prevailing party, because Plaintiff's voluntary dismissal under Rule 41(a) operated as an adjudication on the merits under the two-dismissal rule. Rule 41(a)(1)(B) states, "[I]f the plaintiff previously dismissed any federal or state court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."  Fed. R. Civ. P. 41(a)(1)(B).  "If the plaintiff invokes Rule 41(a)(1) a second time for an action based on or including the same claim, the action must be dismissed with prejudice. This is what's known as 'the two dismissal rule.'"  *Great Lakes Ins. SE v. Crabtree*, 673 F. Supp. 3d 1301, 1307 (S.D. Fla. 2023) (citation omitted).  Yet, "a dismissal by motion and court order does not implicate the Rule 41(a)(1) two dismissal rule . . . ."  *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999).

Defendant Bolinder's argument is unpersuasive for several reasons.  First, the two-dismissal rule does not apply when the dismissal is obtained by a court order.  *See ASX Inv. Corp.*, 183 F.3d at 1269 (concluding that the two-dismissal rule does not apply when the court orders the dismissal of the action).  Plaintiff's prior cases in this District were dismissed by the Court, not by

Plaintiff, in both instances. *See John v. Bolinder et al.*, No. 22-CIV-23401, DE 23 (S.D. Fla. Jan. 26, 2023) (dismissing case by Order dated January 26, 2023 based on the court declining to exercise jurisdiction under the first-filed rule); *John v. Bolinder et al.*, No. 24-CIV-20348, DE 50 (S.D. Fla. Aug. 7, 2024) (dismissing case by Order dated August 7, 2024 based on an impermissible shotgun pleading and judicial immunity). These prior dismissals, therefore, cannot trigger the two-dismissal rule. *See Morris v. Mam'll Dev. Partners, LP*, No. 23-CIV-01641, 2024 WL 811489, at *4 (D. Md. Feb. 23, 2024) (finding that the two-dismissal rule was inapplicable because the prior dismissal was obtained by a court order).

The only similar remaining action to support the two-dismissal rule is the case that Plaintiff filed in the Eastern District of Arkansas. *See John v. Arkansas, State of et al.*, No. 22-CIV-00817, DE 4 (Nov. 28, 2022). But, a review of the respective complaints shows that the claims and defendants in the Eastern District of Arkansas are not the same as those set forth in this case. Specifically, the Arkansas case involved claims under the Fourteenth and Fourth Amendment for Fraud and Civil Rights. *John v. Arkansas, State of et al.*, No. 22-CIV-00817, DE 1 at 3 (Nov. 28, 2022). In that case, Plaintiff alleged that the state court judge supposedly "committed criminal violations of law" by threating "to hang [] [Plaintiff] on the record and subsequently 3 more times" (*id.* ¶¶ 6, 11). Plaintiff also brought allegations concerning a July 2012 criminal contempt hearing (*id.* ¶ 12). In this case, Plaintiff brought claims for Violation of Due Process and Equal Protection, Conspiracy to Violate Civil Rights, Violation of Access to Courts and First Amendment Rights, Malicious Prosecution, and Administrative and Judicial Obstruction (DE 1 ¶¶ 79-107). Plaintiff's allegations concern a July 19, 2024 contempt petition in the custody dispute, of which he allegedly received no notice (*id.* ¶¶ 22-27). While both cases are plainly related to the Arkansas custody dispute, it is unclear whether the Eastern District of Arkansas case and this case are based on or

including the same claim, given the variation in the claims brought, the defendants, and the facts

alleged.  *See ASX Inv. Corp.*, 183 F.3d at 1267 ("We take care not to construe the rule too broadly,

as it is an exception to the general principle" (citation omitted)).

Even if the Eastern District of Arkansas case and this case are based on the same claim,

such that Plaintiff's Notice of Voluntary Dismissal functioned as an adjudication on the merits,

that alone does not mean Defendant Bolinder was the prevailing party within the meaning of

Section 1988(b).  Importantly, "the phrase 'prevailing party' in § 1988(b) is a 'legal term of art.'"

*Lackey*, 604 U.S. at 199.  "The 'touchstone of the prevailing party inquiry' is 'the material

alteration of the legal relationship of the parties,' and '[t]his change must be marked by 'judicial

*imprimatur* . . . .'"  *Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*, 108 F.4th

1358, 1362 (11th Cir. 2024) (citations omitted) (emphasis in original).  "[A] defendant 'prevails

whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's

decision.'"  *Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1297 (11th Cir. 2021).

"But this is true only when the rejection of the plaintiff's challenge is 'marked by 'judicial

*imprimatur*.'  This means that a defendant does not attain prevailing-party status merely because,

as a practical matter, a plaintiff is unlikely or unable to refile its claims. Instead, the court itself

must act to reject or rebuff the plaintiff's claims."  *Affordable Aerial Photography*, 108 F.4th at

1363 (emphasis in original).

Notwithstanding the two-dismissal rule, Plaintiff's Notice of Voluntary Dismissal was

effective simply by its filing and did not require ratification by the Court.  Whether the dismissal

operated with or without prejudice, it was not marked with "judicial *imprimatur* altering the legal

relationship between the parties such that any party may claim 'prevailing party' status for the

purpose of an award of costs or attorneys' fees."  *Manhattan Constr. Co. v. Phillips*, No. 09-CIV-

1917, 2012 WL 13001901, at *5 (N.D. Ga. Dec. 12, 2012).  Indeed, courts have routinely found

that actions resolved by way of Rule 41(a)(1) – in contrast to those resolved by way of Rule

41(a)(2), which requires a court order – do not provide a defendant with prevailing party status.

*See id.* (collecting cases); *see also Affordable Aerial Photography, Inc. v. Reyes*, No. 23-12051,

2024 WL 4024619, at *2 (11th Cir. Sept. 3, 2024) ("While . . . some voluntary dismissals with

prejudice can entitle a defendant to prevailing-party status, we have not held that they always

entitle a defendant to prevailing-party status . . . .").  Moreover, Defendant Bolinder cited no

authority in support of her argument that because Plaintiff's voluntary dismissal falls under Rule

41(a)(1)(B) and thus, operates as an adjudication on the merits, Defendant Bolinder can be

considered a prevailing party for purposes of awarding fees.  Accordingly, Defendant Bolinder has

not shown her entitlement to attorney's fees under Section 1988(b).

### 2.     Request for Fees Under the Court's Inherent Authority

Alternatively, Defendant Bolinder argues that Plaintiff brought his claims in bad faith, as

demonstrated when he filed his Notice of Voluntary Dismissal "minutes before his 'emergency'

hearing so he could avoid a merits adjudication of his frivolous claims" (DE 32 at 4-5).  Defendant

Bolinder contends that if Plaintiff thought his case was necessary to protect his constitutional rights,

he would have attempted to reach the merits of his claim and appeal any adverse ruling (*see id.* at

5-6).  Defendant Bolinder also contends that Plaintiff refiled claims against the state court judge

despite a court dismissing those claims "with prejudice" (*id.* at 6).  As another example of

Plaintiff's purported bad faith, Defendant Bolinder points out that Plaintiff "gratuitously lobbed

scandalous allegations about [Defendant] Bolinder's mental health in a public filing (*id.* at 7 (citing

DE 28 at 5)).  Therefore, Defendant Bolinder urges the Court to sanction Plaintiff under its inherent

authority by awarding her reasonable attorney's fees (*id.* at 9).

Plaintiff counters that he received various rulings in his favor through appeals and other avenues in the Arkansas custody dispute, creating a "record [that] forecloses any suggestion that Plaintiff's filings were 'frivolous, unreasonable, or without foundation'" (DE 36 at 4). In Plaintiff's view, his filings "were necessary to protect constitutional rights amid continuing obstruction and retaliation" by Defendant Bolinder and her co-defendants based on subsequent actions Defendant Bolinder allegedly took in the Arkansas custody dispute (*id.*). According to Plaintiff, this demonstrates that his claims are not frivolous or brought in bad faith.

"The Court's inherent powers include the authority to regulate litigation and impose 'reasonable and appropriate' sanctions on the parties . . . for abusive practices." *BPI Sports, LLC v. Thermolife Int'l, LLC*, No. 19-CIV-60505, 2021 WL 2946170, at *2 (S.D. Fla. July 14, 2021). "To assess fees under its inherent authority, the court must find a party has acted in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Eisenberg Dev. Corp. v. City of Miami Beach*, 95 F. Supp. 3d 1376, 1380 (S.D. Fla. 2015) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "The key to unlocking a court's inherent power is a finding of bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). "A finding of bad faith is warranted where an attorney [or party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation and quotation omitted). "[I]nherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44 (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Plaintiff's actions compel the undersigned to recommend that the Court exercise its discretion by sanctioning Plaintiff for his bad faith in pursuing this litigation, bringing frivolous

claims, and requesting emergency relief from the Court that he declined to pursue.  A finding of bad faith is supported by: (1) Plaintiff repeatedly filing federal lawsuits against Defendant Bolinder and others with frivolous claims arising from an Arkansas custody dispute that began around 15 years ago, which are either voluntarily dismissed by Plaintiff or dismissed by the Court; (2) Plaintiff certifying that his Amended Petition for a Temporary Restraining Order was a true emergency and that he faces imminent and irreparable harm and then delaying and ultimately, terminating court proceedings minutes before the emergency hearing; (3) Plaintiff refiling claims in this action that he knew were subject to judicial immunity based on denials and dismissals in prior two actions; and (4) Plaintiff's inappropriate and gratuitous inclusion of statements about Defendant Bolinder's mental health, which are inflammatory and completely irrelevant.  This conduct, collectively, "abuses the judicial process." *Chambers*, 501 U.S. at 45.

Turning first to Plaintiff's pattern of litigation, the procedural history of the Eastern District of Arkansas case and the cases in this District make one thing clear: Plaintiff has never tried to, and the Court has never seen a basis to, reach the merits of his cases.  Plaintiff has either voluntarily dismissed his case early in the proceedings, or a court has dismissed his complaints finding that his claims did not survive the pleading stage.  Looking just at this case, Plaintiff twice filed Emergency Petitions for a Temporary Restraining Order (DE 3, DE 11).  The Court initially denied Plaintiff's Emergency Petition for Temporary Restraining Order without prejudice, explaining that it was unclear if the Court had subject matter jurisdiction, while also noting that Plaintiff did not comply with the Federal Rules of Civil Procedure and the Local Rules of this Court (DE 10 at 2-3).[4]  The Court highlighted for Plaintiff the representations he needed to make to Court to obtain

---

[4] Plaintiff filed the Emergency Petition for Temporary Restraining Order, knowing that when he requested similar relief in a prior federal case, the Eastern District of Arkans denied his request to

emergency relief, giving Plaintiff an opportunity to assess his request carefully and withdraw it if it was not brought in good faith or did not meet the requirements in the Rules. Nevertheless, on August 6, 2025, Plaintiff refiled his request for emergency relief in his Amended Emergency Petition (DE 11). In response, the Court set a hearing within two days, based on Plaintiff's certification under the Local Rules, which states,

> I certify that this matter is a true emergency. Plaintiff and his minor child face imminent and irreparable harm, including the threat of felony criminal charges and physical seizure of the child within the next 12 to 24 hours. A ruling is urgently needed within hours, on August 6, 2025, to prevent unlawful detention, coercive custody interference, and violations of constitutional rights.

(DE 11 at 2).[5] Despite certifying to the Court that emergency relief was necessary, Plaintiff requested a continuance of the hearing, because he was "responsible for an urgent and time-sensitive matter involving the minor child at the center of this case" and could not "adequately prepare for or appear at a substantive hearing" (DE 16).

In opposing Plaintiff's request for a continuance of the hearing, Defendant Bolinder stated, "There is a hearing set in the Arkansas custody case for August 8, 2025 at 1:15 p.m. The Arkansas judge ordered Plaintiff to appear in person for that hearing with his child and also to bring the child for a meeting with a court-appointed attorney ad litem on August 7 at 10:00 am" (DE 18 at 1-2). The opposition contained a screenshot of an email from the attorney *ad litem* in the Arkansas custody case stating Plaintiff did not comply with his court-ordered obligations (*id.* at 2). Defendant Bolinder further stated in her opposition to the continuance:

> Plaintiff is now trying to use this lawsuit as a pretext to fail to appear at the August 8 hearing in Arkansas as well. In the Motion, he acknowledges that the 'child is

---

enjoin the Arkansas state court judge's orders. *See John v. Arkansas, State of et al.*, No. 22-CIV-00817, DE 3 (E.D. Ark. Nov. 28, 2022).

[5] Southern District of Florida Local Rule 7.1(d)(1) further explains that "the unwarranted designation of a motion as an emergency motion may result in sanctions." S.D. Fla. L. R. 7.1(d)(1).

with Plaintiff in Florida' not Arkansas, and vaguely asserts that he is responsible for an 'urgent and time-sensitive matter involving the minor' on August 8 that renders him unable to attend the show cause hearing in this matter.  In other words, he is all but confirming that he intends to flout the Arkansas court's order to be present at tomorrow's hearing in Arkansas. Presumably, this Court set the show cause hearing via Zoom at 11:00 am on August 8 to permit Plaintiff to comply with the Arkansas court's order and attend the hearing in Arkansas later that day . . . .

(*id.* at 3).  Although Plaintiff offered nothing but vague statements to justify the continuance, the Court granted his request and reset the hearing a week later (DE 19).  Then, only minutes before the hearing was scheduled to begin, Plaintiff filed his Notice of Voluntary Dismissal (DE 24).

The Court cannot help but ask: if a party claims there is an emergency where the party is subject to imminent and irreparable harm, why delay the proceedings and then dismiss the case minutes before your hearing is scheduled to begin?  Particularly when placed in the context of the previously filed cases and the orders in effect of the Arkansas judge in the custody dispute, there is only one conclusion the Court can reasonably draw – that Plaintiff filed a frivolous and harassing action in an attempt to circumvent proceedings in the custody dispute, while misrepresenting the existence of true emergency to this Court in his certification.  Put plainly, Plaintiff is "abusing the federal court system, needlessly adding to the court's docket and harassing opposing [parties.]" *Godwin v. Marsh*, 266 F. Supp. 2d 1355, 1360 (M.D. Ala. 2002).  But, there is more.

Further evidencing the frivolousness of this action, Plaintiff pursued claims in this action against two Arkansas state court judges, in spite of prior adverse rulings on such claims in two of the prior cases.  In the Eastern District of Arkansas case, the court denied Plaintiff's motion for temporary restraining order stating, "Because Judge Schrantz performed the actions at issue in his judicial capacity, his immunity from suit is absolute." *John v. Arkansas, State of et al.*, No. 22-CIV-00817, DE 3 at 3 (E.D. Akr. Sept. 9, 2025).  Again, this Court explained, "Plaintiff's claims against Judge Schrantz are dismissed with prejudice. 'Judges are entitled to absolute judicial

immunity from damages for those acts taken while they are acting in their judicial capacity . . . .'" *John v. Bolinder et al.*, No. 24-CIV-20348, DE 50 (S.D. Fla. Aug. 7, 2024) (citation omitted). Even with these clear rulings, Plaintiff brought *another* suit against Arkansas state court judges in the custody dispute—the claims against one of whom was dismissed from an earlier case *with prejudice* (DE 1 ¶¶ 8, 9). Plaintiff is repeatedly relaunching claims against the Arkansas judges in the custody dispute with every new decision, despite Plaintiff's knowledge of, and alleged success with, the Arkansas appellate process (*see* DE 36 at 4).

The Court's conclusion of bad faith is also supported by Plaintiff needlessly discussing Defendant Bolinder's prior mental health issues in a public filing, which had no relevance whatsoever to Plaintiff's claims or this case (*see* DE 28 at 5). The Court can fashion a sanction when a party misuses the justice system, evidences bad-faith conduct during the litigation, and institutes an action for the purpose of harassing another party. *See Chambers*, 501 U.S. at 45 (explaining that the primary purpose of a court's inherent authority is to sanction behavior that abuses the judicial process); *see also Godwin*, 266 F. Supp. 2d at 1360 (sanctioning a *pro se* plaintiff who filed five meritless lawsuits attempting to re-litigate a state probate matter). On this record, there is ample evidence for the Court to find that Plaintiff proceeded in bad faith during this litigation, brought wholly frivolous claims against Defendant Bolinder and others, and misrepresented the need for emergency relief in a certification to the Court, which supports an award of reasonable attorney's fees to Defendant Bolinder for defending herself in this action.

### 3.    Reasonableness of an Award of Attorney's Fees

Defendant Bolinder requests $ 28,199.60 and contends that her counsel's rate of $710 per hour to $440 per hour is reasonable and has not changed since 2022 (DE 32 at 8). In support of her Motion, Defendant Bolinder attaches the biographies of her counsel, a spreadsheet indicating

the time billed, a description of the work done, and redacted invoices (DE 32-1).  According to

Defendant Bolinder, courts in this District have found in different cases that the hourly rates for

her lawyers are reasonable (DE 32).  Similarly, Defendant Bolinder claims that the 50.94 hours

worked in this case are reasonable, as she needed to review Plaintiff's emergency filings, draft

oppositions, prepare for a hearing on Plaintiff's Emergency Amended Petition for Temporary

Restraining Order, attend a hearing, and draft a motion (*id.* at 8-9).  Defendant Bolinder clarifies

that she "is not seeking to recover any time that is excessive, duplicative, or unnecessary" (*id.* at

9).  Plaintiff argues that even if Defendant Bolinder is entitled to attorney's fees, her fee award

should be reduced due to administrative work, duplicative staffing, vague time entries, and

premium market rates without proof (*id.* at 5).  Plaintiff also seeks an "additional 30% across-the-

board reduction to account for reaming duplication and block billing" (*id.* at 6).

      "Under the lodestar method, courts determine attorney's fees based on the product of the

reasonable hours spent on the case and a reasonable hourly rate."  *In re Home Depot Inc.*, 931 F.3d

1065, 1076 (11th Cir. 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "A

reasonable hourly rate is the prevailing market rate in the relevant legal community for similar

services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous.*

*Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted).  "[T]he

applicant bears the burden of producing satisfactory evidence, in addition to the attorney's own

affidavits, that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation. . . ."  *N.A.A.C.P.*

*v. City of Evergreen, Ala.*, 812 F.2d 1332, 1338 (11th Cir. 1987).

      "The next step in the computation of the lodestar is the ascertainment of reasonable hours."

*Norman*, 836 F.2d at 1301 (citation omitted).  "Excessive, redundant or otherwise unnecessary

hours should not be included in the calculation." *Harbaugh v. Greslin*, 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). "The burden is on the party opposing the requested fees to object to the hours expended." *Garden World Images Ltd. v. WilsonBrosGardens.com LLC.*, No. 19-CIV-01035, 2019 WL 8017802, at *6 (N.D. Ga. Oct. 31, 2019). "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation omitted)).

A review of the supporting documentation attached to Defendant Bolinder's Motion for Attorney's fees convinces the Court that the rates are reasonable, but the hours claimed should be subject to further scrutiny. Defendant Bolinder's counsel's rates are $710 per hour for a shareholder, and $440 per hour for associates (DE 32-1 at 4). In a declaration, Defendant Bolinder's counsel explains that she seeks 50.94 hours of work performed by attorneys and staff since August 2025 (*id.* ¶ 8). Courts in this District have recently found that similar rates to Defendant Bolinder's counsel's rates are reasonable, and the undersigned agrees, particularly in light of counsel's qualification and experience (*id.* at 6-14); *see also Trump v. Clinton*, 653 F. Supp. 3d 1198, 1229 (S.D. Fla. 2023), *appeal dismissed*, No. 23-10536, 2023 WL 3477967 (11th Cir. Apr. 6, 2023) (finding rates of $700 for shareholders and $300 for associates as reasonable); *see also Celsius Holdings, Inc. v. A SHOC Beverage*, LLC, No. 21-80740-CV, 2022 WL 3568042, at *4 (S.D. Fla. July 19, 2022), *aff'd in part, vacated in part, remanded*, No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025) (finding rates similar to those charged by Defendant Bolinder's counsel as reasonable). As such, Defendant Bolinder's counsel's request is a reasonable hourly rate in this legal community based on skill, experience, and reputation.

Turning to the number of hours claimed, the undesigned finds that there are duplicative and unnecessary hours contained within Defendant Bolinder's counsel's timesheets that warrant a reduction.  Notably, while Plaintiff created unnecessary litigation surrounding the request for an emergency temporary restraining order, this case was still in its infancy when it was dismissed. The timesheets show that there are duplicative billings for drafting various responses and motions from multiple attorneys, such as drafting a motion to transfer, preparing for a hearing on Plaintiff's emergency petition, attending a hearing, and drafting the motion to deem Plaintiff a vexatious litigant (DE 32-1 at Ex. B).  Plaintiff asks for a 30% across-the-board reduction in addition to specific line-item cuts (DE 36 at 6).  During the November 20, 2025 hearing, when asked by the Court about duplicative entries in the billing records, Defendant Bolinder's counsel agreed to reduce the hours claimed by cutting all hours billed by the shareholder and solely seeking compensation for the hours billed by an associate.  The undersigned deems this proposed reduction to reflect a reasonable number of hours worked by counsel that eliminates duplicative entries.

Additionally, 20.59 hours billed for Defendant's Bolinder's counsel's work related to her Motion to Deem Plaintiff a Vexatious Litigant should be cut, because those hours do not reflect the expense to Defendant Bolinder in defending against a frivolous and harassing suit that Plaintiff conducted in bad faith. *See Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998) (noting district court should fashion sanctions in direct response to the harm that the bad faith conduct causes); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1305 (11th Cir. 2006) (explaining that the court does not abuse its discretion in awarding fees as a sanction where the award is "tied to the delays and protracted litigation caused by [a party's] dilatory conduct").  Thus, the time sheets demonstrate that when calculating the hours worked by an associate, which does not include hours related to the Motion to Deem Plaintiff a Vexatious Litigant, the total number of hours is 16.33.  Multiplying

counsel's associate rate of $440 by 16.33 hours worked results in an award of $7,185.20 in reasonable attorney's fees.  It is therefore respectfully recommended that the Court award Defendant Bolinder $7,185.20 in attorney's fees under its inherent authority for Plaintiff's bad faith in conducting this litigation and advancing frivolous and harassing claims and arguments.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant Bolinder's Motion to Deem Plaintiff a Vexatious Litigator (DE 27) be **DENIED**.  It is further respectfully recommended that Defendant Bolinder's Motion for Attorney's Fees (DE 32) be **GRANTED IN-PART** and that Defendant Bolinder be awarded **$7,185.20** in reasonable attorney's fees under the Court's inherent authority based on Plaintiff's bad faith in litigating this action and misuse of the judicial process.

## V.  OBJECTIONS

The Parties will have fourteen (14) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain

error, if necessary, in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 2nd day of February, 2026.

_____
ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:     *Pro se* Plaintiff J. David John
        All Counsel of Record